**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELLANIE GAYMON, et al., | Civil Action No.: 11-4170 (JLL) |
| Plaintiffs, | |
| v. | **OPINION** |
| SHERIFF'S OFFICER EDWARD ESPOSITO, et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of a Motion for Judgment on the Pleadings filed respectively by Defendants Essex County Sheriff's Office ("ECSO"), Sheriff Armando Fontoura ("Sheriff Fontoura" or "Fontoura"), and Undersheriff Kevin Ryan ("Undersheriff Ryan" or "Ryan") (collectively, the "Supervisory Defendants") to dismiss Plaintiffs Mellanie Gaymon (Administrator Ad Prosequendum of the Estate of Defarra I. Gaymon and Guardian Ad Litem for her Minor Children) and Rev. George Gaymon (Executor of the Estate of Defarra I. Gaymon) ("Plaintiffs") Complaint pursuant to Fed. R. Civ. P. 12(c).  [Docket Entry No. 18].  Defendant County of Essex joins the relevant portions of the Motion for Judgment on the Pleadings of the Supervisory Defendants.  [Docket Entry No. 23].  The court has considered the submissions of the Parties and rules on the papers pursuant to Fed. R. Civ. P. 78.  For the reasons stated herein, Defendants' Motion for Judgment on the Pleadings is granted in part and denied in part.

## I. BACKGROUND

On or about July 16, 2010, Plaintiffs' decedent Defarra I. Gaymon ("Decedent" or "Mr. Gaymon"), the chief executive officer of a credit union in Atlanta, Georgia, was at Branch Brook Park in Newark, New Jersey at approximately 6:15 p.m. (Compl., ¶¶ 12-14). Mr. Gaymon was allegedly unarmed at said Park when an encounter occurred between himself and Defendant Officer Edward Esposito ("Officer Esposito"). (Id., ¶¶ 15, 16). Officer Esposito chased Decedent to a pond located within the park, unholstered and drew his gun. (Id., ¶¶ 17, 18). Officer Esposito then purportedly took aim with his revolver and fired it once at Mr. Gaymon, hitting him with a bullet in the stomach and causing his death. (Id., ¶ 19).

On June 17, 2011, Plaintiffs filed a twelve-count Complaint in the Superior Court of New Jersey, Essex County asserting federal and state law claims against Officer Esposito, the Supervisory Defendants, and other John Does. [Docket Entry No. 1, Ex. A]. Defendants filed a Notice of Removal to remove the action to this Court on July 20, 2011. [Docket Entry No. 1]. On January 27, 2012, the Supervisory Defendants filed the instant Motion for Judgment on the Pleadings. [Docket Entry No. 18]. Plaintiffs duly filed their Opposition on February 21, 2012, and the Supervisory Defendants filed their Reply on March 2, 2012. [Docket Entry Nos. 22, 26].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  Under Rule 12(c), a court must view the facts in the pleadings and

any inferences drawn therefrom in the light most favorable to the nonmoving party, and

the motion should not be granted "unless the moving party has established that there is no

material issue of fact to resolve, and that it is entitled to judgment as a matter of law."

Perez v. Griffin, 304 Fed. Appx. 72, 74 (3d Cir. 2008)(citing Mele v. Fed. Reserve Bank

of N.Y., 359 F.3d 251, 253 (3d Cir. 2004)).  A court is not required to accept sweeping

legal conclusions cast in the form of factual allegations, unwarranted inferences or

unsupported conclusions in its Rule 12(c) review.  Morse v. Lower Merion Sch. Dist.,

132 F.3d 902, 906 (3d Cir. 1997).

 Where the moving party asserts that the complaint fails to state a claim upon

which relief may be granted, the court applies the same standards as those applied in a

Rule 12(b)(6) motion to its review of a motion for judgment on the pleadings filed

pursuant to Rule 12(c).  See Turbe v. Government of Virgin Islands, 938 F.3d 427, 428

(3d Cir. 1991).  For a complaint to survive dismissal, it "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

v. Iqbal, 129 S. Ct. 1937, 1949  (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  "Factual allegations must be enough to raise a right to relief above the

speculative level."  Twombly, 550 U.S. at 555.  Further, "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949  (2009) (citing Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)); Evancho v. Fisher, 423 F.3d 347, 350

3

(3d Cir. 2005) ("[A] Court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss").

## III.  DISCUSSION

### A.  Counts I and VIII: Section 1983 Claim for Excessive Force and Unconstitutional Practice of Employing Excessive Force When Making Arrests

42 U.S.C. § 1983 provides a civil action for the deprivation of rights against:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.  To establish a valid § 1983 claim, a plaintiff must show that "the conduct complained of was committed by a person acting under color of state law" and that the "conduct deprived the plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United States." Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011)(citing Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993)).  Claims of excessive force have emerged in a variety of contexts, requiring the application of differing standards based on the nature of the alleged constitutional violation.  See Graham v. Connor, 490 U.S. 386, 39-34 (1989)("We reject this notion that all excessive force claims brought under § 1983 are governed by a single generic standard.  As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights elsewhere conferred.'")(citations omitted).  When the use of force is alleged to be excessive in the context of an arrest, the § 1983 claim may be premised on a violation of an individual's Fourth Amendment right "to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend. 4; see, e.g., Santiago v. Warminster Twp., 629 F.3d 121, 126 (3d Cir.

4

2010).  Since Plaintiffs sue the Supervisory Defendants in their individual and official capacities, the Court will consider the sufficiency of Plaintiffs' pleadings with respect to each in turn.  (See Compl., ¶¶ 9, 10).  Since the Court finds that Plaintiffs' Complaint fails to state a claim against the Supervisory Defendants under either capacity, the Court does not assess the availability to said Defendants of the qualified immunity defense as asserted in their Motion.

> 1.  Supervisory Liability for Excessive Force: Defendants Fontoura and Ryan in their Individual Capacities

The Supervisory Defendants argue that Plaintiffs have failed to state a § 1983 claim for excessive force as against them because: (1) there is no respondeat superior liability under the statute (Defs. Br., at 10); (2) Plaintiffs have not sufficiently pled policymaker liability by showing that the Supervisory Defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom that directly caused the constitutional harm (Defs. Br., at 15); and (3) Plaintiffs have failed to plead that they were personally involved in the alleged wrongs committed by Officer Esposito, that they directed the commission of those wrongs, or that they had knowledge of and acquiesced in those wrongs.  (Defs. Br., at 10).  Plaintiffs do not respond in their Opposition briefing to Defendants' excessive force claims as challenged in Defendants' Motion for Judgment on the Pleadings.  (See Pls. Opp'n Br.; Defs. Reply Br., at 2).

In reviewing Plaintiffs' § 1983 claim alleging Defendants' unconstitutional use of excessive force, the Court must assess: (1) whether Plaintiffs sufficiently pled the use of excessive force; and (2) whether, if the Plaintiffs have so pled, they sufficiently pled the supervisory liability of Defendants.  The Court will consider each of these issues in turn.

### a. Use of Excessive Force

To allege a § 1983 claim for the use of excessive force, deadly or not, a plaintiff must show that a "seizure" occurred, and that that seizure was unreasonable. <u>Kopec v. Tate</u>, 361 F.3d 772, 776 (3d Cir. 2004)(quotation and citation omitted). The Supreme Court has held that the use of deadly force, "[w]here the suspect poses no immediate threat to the officer and no threat to others," is not justified. <u>Tennessee v. Garner</u>, 471 U.S. 1, 11 (1985). Still, "[w]here the officer has probable cause to believe that the suspect poses a threat of physical harm, either to the officer or to others," deadly force may be justified. <u>Id.</u>

Further, when the excessive force alleged occurred in the course of an arrest, investigatory stop, or other "seizure" of a free citizen, the test of "reasonableness" used by the Court requires an assessment, under the totality of the circumstances, of whether an "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations."[1] <u>Graham</u>, 490 U.S. at 395-97. The "reasonableness" test thus involves "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." <u>Id.</u>, at 396-97 (internal quotations omitted). Evaluating the objective reasonableness of the police conduct "requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether the suspect poses an immediate threat to the

---

[1] Defendants do not move to dismiss Count III of Plaintiffs' Complaint alleging a violation of Decedent's Fourth Amendment rights. Since Count III alleges the use of excessive and deadly force resulting in the death of the Decedent in an unreasonable seizure while Decedent was unarmed, the Court will construe Plaintiffs' Fourth Amendment claim as incorporated in their § 1983 claims in Counts I and VIII, which allege an unconstitutional use of excessive force by Defendants during Officer's Esposito's pursuit of the Decedent.

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., at 396.  Further, a court may consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Kopec, 361 F.3d at 777 (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).  "Reasonableness" under the Fourth Amendment "should frequently remain a question for the jury. . . . since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared." Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999).

        Assuming the facts of Plaintiffs' Complaint to be true, as this Court must, we find that Plaintiffs have sufficiently pled the use of excessive force.  Defendants do not contest that a seizure occurred, but they do contest whether the alleged "altercation" with, "chase," or shooting of the Decedent was "not reasonable and necessary under the circumstances." (Defs. Br., at 12).  It is probable, based on the facts as pled, that the use of deadly force lacked probable cause and the seizure of the Decedent was unreasonable. Considering the requisite factors as laid out in Graham, the Complaint alleges that the Decedent was at worst in violation of a city ordinance prohibiting lewd conduct, activity which has not been deemed violent or felonious crime. (Compl., First Count, ¶ 4; Fifth Count , ¶¶ 1-4).  Further, accepting the facts pled to be true, Decedent did not appear to pose an immediate threat to the safety of the officers or others as he was unarmed. (Compl., ¶ 15).  While there is some evidence that could lead the Court to infer that the

7

Decedent was attempting to evade arrest by flight, the Court finds the Supreme Court's finding in Tennessee v. Garner dispositive in its determination that, even in the context of fleeing felony suspects, "[t]he use of deadly force to prevent the[ir] escape . . ., whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." Garner, 471 U.S. at 11; see also, In re City of Philadelphia Litig., 49 F.3d 945, 970-71 (3d Cir. 1995). In assessing all of the relevant factors—that the Decedent was not engaged in a violent crime, that he was unarmed, and that the police used deadly force—the Court finds that Plaintiffs' have sufficiently alleged a plausible § 1983 claim of excessive force. Since the Court finds that a violation of Decedent's rights was sufficiently pled, the condition precedent for asserting liability for direction to violate those rights has been met for asserting a theory of supervisory liability. See Santiago, 629 F.3d at 130 ("any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates.").

### b. Supervisory Liability of Defendants

Defendants are correct, however, in their assertion that neither Sheriff Fontoura nor Undersheriff Ryan may be held liable for alleged constitutional violations merely because they were Officer Esposito's supervisors at the time of the alleged violations of

8

the Decedent's rights.  See Iqbal, 129 S. Ct. at 1948 ("Government officials may not be

held liable for the unconstitutional conduct of their subordinates under a theory of

respondeat superior."); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)(finding

civil rights liability cannot be based on respondeat superior theory).  However,

Defendants Fontoura and Ryan may be held liable for actions taken in their individual

capacity if: (1) as policymakers, they, "with deliberate indifference to the consequences,

established and maintained a policy, practice or custom which directly caused [the]

constitutional harm"; or (2) if they "participated in violating the plaintiff's rights, directed

others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in

his subordinates' violations."  A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr.,

372 F.3d 572, 586 (3d Cir. 2004).  Further, to sufficiently state a claim for supervisory

liability, a plaintiff must allege "a causal connection between the supervisor's direction

and that violation, or, in other words, proximate causation.  Proximate causation is

established where the supervisor gave directions that the supervisor 'knew or should

reasonably have known would cause others to deprive the plaintiff of her constitutional

rights.'"  Id. (citations omitted).  Specifically, the connection alleged between the

supervisor's direction and the constitutional deprivation "must be sufficient to

'demonstrate a "plausible nexus" or "affirmative link" between the [directions] and the

specific deprivation of constitutional rights at issue.'"  Id. (quoting Hedges v. Musco, 204

F.3d 109, 121 (3d Cir. 2000)).  Thus, to state their claim against Sheriff Fontoura and

Undersheriff Ryan, Plaintiffs must allege facts making it plausible either that: (1)

Defendants Fontoura and Ryan acted with deliberate indifference to the consequences in

establishing and maintaining a policy, practice or custom that directly caused the use of

9

excessive force during the ECSO undercover patrol operation conducted in Branch Brook Park on July 16, 2010; or (2) that they had knowledge of said use of excessive force and acquiesced to Officer Esposito's violations as part of that operation.

Plaintiffs allege through only conclusory assertions that ECSO's undercover patrol operations in Branch Brook Park were implemented and overseen by the Supervisory Defendants. Plaintiffs' allegations regarding the events that occurred on or about July 16, 2010 in Branch Brook Park are factual and more than merely a recitation of the elements of a cause of action, but the allegations of supervisory liability constitute only a "formulaic recitation of the elements of a [supervisory liability] claim," Iqbal, 129 S. Ct. at 1951 (internal quotation marks omitted) – namely, that Defendant Fontoura was "responsible by law for ensuring that ECSO Sheriff's Officers obey the rules and regulation of the ECSO and the Attorney General Guidelines with respect to the use of deadly force as well as the laws of the State of New Jersey and the United States," (Compl., ¶ 9), and that Defendant Ryan "supervised the day-to-day operations of the ECSO undercover patrol operation in Branch Brook Park" and was "responsible for ensuring that ECSO Sheriff's Officers obey the rules and regulations of the ECSO and the Attorney General Guidelines with respect to the use of deadly force " (Compl., ¶ 10). Plaintiffs at most conclusorily state that, "Defendants County of Essex, ECSO, Sheriff Armando Fontura, Undersheriff Kevin Ryan, and Officer Edward Esposito did violate decedent Defarra Gaymon's Constitutional Rights and did so pursuant to a policy, custom and de facto pattern and practice of the County of Essex and/or ECSO's deliberate indifference to the Constitutional Rights of the citizens of the State of New Jersey and decedent Defarra Gaymon's in particular[,] by employing excessive force when

10

attempting to arrest decedent." (Compl., Eighth Count, ¶ 2). Beyond the factual

allegations in Paragraphs 9 and 10 of Plaintiffs' Complaint, including those made under

the appropriate Counts alleging excessive force (Count I and VIII), no further facts are

alleged regarding the conduct, direction, knowledge or acquiescence of the Supervisory

Defendants with respect to the alleged use of excessive force resulting in Decedent's

death.  The Complaint does not indicate if the Supervisory Defendants were even present

during the operation in Branch Brook Park, and even if they were, that that alone would

support a plausible inference that the Supervisory Defendants knew of the level of force

used against the Decedent.  See McKenna v. City of Philadelphia, 582 F.3d 447, 460 (3d

Cir. 2009)(holding that a supervisor's presence "in the vicinity of the arrest at some point

after [plaintiff] is handcuffed . . . is not a legally sufficient evidentiary basis" to find

knowledge and acquiescence).  Further, Plaintiffs recite no facts to support that either of

the Supervisory Defendants were the "final policymakers" that devised a plan to use

deadly force against the Decedent at Branch Brook Park.  Even if said Defendants were

shown to be the "final policymakers," the complaint alleges no facts supporting the

allegation that their plan caused the Decedent's death over and against the independent

actions of Officer Esposito.  For these reasons, the Court finds that Plaintiffs have failed

to state a § 1983 claim for excessive force against the Supervisory Defendants in their

individual capacities based on their supervisory liability.

### 2.  Supervisory Liability for Excessive Force: Defendants Fontoura and Ryan in their Official Capacities and Defendant Essex County

A suit against a supervisor for actions taken in his official capacity is essentially a

suit against the governmental entity, the County of Essex in this case, that employs him.

See Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690 n. 55 (1978).

For a governmental entity to be liable under § 1983, "the plaintiff must identify a policy or custom of the entity that caused the constitutional violation." <u>A.M.</u>, 372 F.3d at 580 (citing <u>Bd. of County Cmm'rs of Bryan County, Okla. V. Brown</u>, 520 U.S. 397, 403 (1997)). A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell</u>, 436 U.S. at 690. A municipal custom is one that, "[a]lthough not authorized by written law," is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Id.</u> at 691.

In the instant Complaint, Plaintiffs fail to allege either a municipal policy or a custom that would satisfy the requirements under <u>Monell</u> and <u>Santiago v. Warminster Twp.</u> for finding the Supervisory Defendants liable. Firstly, the Complaint fails to allege any statement, ordinance, regulation or official decision adopted and promulgated by Essex County regarding the authorization of certain officers to use deadly force in contexts such as those that Officer Esposito found himself according to the facts stated in the Complaint, namely, when an unarmed civilian flees a police officer during an undercover operation to enforce ordinances circumscribing certain forms of conduct in public parks. Again, Plaintiffs only state, in a conclusory manner, that the Supervisory Defendants violated the Decedent's rights "pursuant to a policy, custom and <u>de facto</u> pattern and practice of the County of Essex." (Compl., Eighth Count, ¶ 2).

Second, Plaintiffs state no facts to support their allegation that a municipal custom regarding the use of deadly force was so permanent and well settled as to constitute the force of a law. In <u>Santiago v. Warminster Twp.</u>, the Third Circuit was asked to consider whether, <u>inter alia</u>, the district court had improperly dismissed § 1983 claims for supervisory liability for the use of excessive force as against the police chief and a

lieutenant in the Warminster Township Police Department. Santiago, 629 F.3d at 125.
The Complaint arose from a "Surround and Call Out" operation at the plaintiff's home
when her home was raided for the purposes of apprehending one of her grandsons. Id.
During the raid, the police officers allegedly handcuffed the plaintiff, a sixty-year-old
woman, and even after her grandson was arrested, forced her to sit with her hands tied for
approximately thirty minutes. Id., at 126. Eventually, the plaintiff complained of pain in
her heart and suffered a heart attack, at which point an ambulance was summoned and
she was taken to the hospital. Id. In reviewing the district court's dismissal of the
plaintiff's excessive force claim as against the supervisory defendants under Monell, the
Third Circuit found that

> Santiago has only alleged that excessive force was used against her. The
> complaint does not allege that any other occupant was threatened with fire. It
> specifically states that the other women were not handcuffed. It does not allege
> that the two grandsons were handcuffed, but one of them was the subject of the
> arrest warrant and there are no allegations stating whether the other was found to
> be armed or a risk of flight. Consequently, there is no basis in the complaint to
> conclude that excessive force was used on anyone except Santiago. . . . Thus,
> Santiago's allegations undercut the notion of a plan for all occupants to be
> threatened with fire and handcuffed.

Id., at 133. Just as in Santiago, the allegations in the instant Complaint with respect to
the use of excessive force are limited to facts concerning force used against Decedent.
The Complaint neither alleges a pattern of unconstitutional deadly force used by ECSO,
nor does it allege that any other individuals visiting the Park were threatened with force.
There is thus no basis to infer that excessive force was used on anyone except the
Decedent. Even if the facts alleged in Plaintiffs' Complaint could support a finding of
excessive force as against Officer Esposito, that does not, without more, provide
sufficient facts to support an inference that a custom or policy was generated by the

Supervisory Defendants under the standards required for municipal liability under Monell. Since the Court finds that Plaintiffs have failed to state a supervisory liability claim for the use of excessive force under § 1983, the Court need not consider the qualified immunity or any other defenses available to Defendants to said claims.

## B.  Count II: Section 1983 Claim for Failure to Properly Train, Supervise and/or Control Officers

### 1.  Failure to Train

Defendants claim that Plaintiffs' Complaint fails to sufficiently allege a failure to train violation since: (1) no facts are alleged as to specific training deficiencies  which caused the purported constitutional violations; (2) Plaintiffs fail to assert a pattern of constitutional violations of which policy-making officials can be charged with knowledge; and (3) Plaintiffs fail to allege that training was obviously necessary to avoid constitutional violations.  (Defs. Br., at 12).  Plaintiffs, however, argue that Defendants "(1) knew or should have known that instituting an undercover sting operation in Branch Brook Park would place Defendant Esposito in the situation of confronting and attempting to effectuate arrest on individuals who were not expecting him to be a law enforcement officer; (2) the amount and/or type of force to be used on a suspect during execution of an undercover operation requires extensive training to prevent unconstitutional and unjustified use of deadly or excessive force; and (3) using unconstitutional and unwarranted deadly force unquestionably deprives individuals of their constitutional rights." (Pls. Opp'n Br., at 11-12).

To establish § 1983 liability for failure to train, a plaintiff must show specific training deficiencies and either (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously

14

necessary to avoid constitutional violations.  City of Canton v. Harris, 489 U.S. 378, 390 (1989).  A municipality may be held liable for its failure to train employees only where that failure amounts to "deliberate indifference to the [constitutional] rights of persons with whom the police come in contact."  Id., at 388; see also Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005); Doe v. Luzerne Cty., 660 F.3d 169, 179 (3d Cir. 2011).  Deliberate indifference is a stringent standard of fault "requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011)(quoting Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997)).  There are two means of finding such deliberate indifference in a failure to train claim: (1) through a pattern of similar constitutional violations providing a municipal actor with notice; and (2) "single-incident" liability as developed doctrinally in the Supreme Court's decisions in City of Canton v. Harris and Connick v. Thompson.

    In general, a plaintiff must establish deliberate indifference in accordance with the first means—a pattern of similar constitutional violations—in order to establish a failure to train claim: "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  Id., at 1360 (citing Bryan Cty., 520 U.S. at 409).  Therefore, to determine if an alleged failure to train amounts to a "deliberate" or "conscious" choice, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will

15

frequently cause deprivation of constitutional rights." Luzerne Cty., 660 F.3d at 179 (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)(citation omitted)). Further, causation between the noticed training deficiency and the injury must be shown: "'for liability to attach in this circumstance the identified deficiency must be closely related to the ultimate injury,' . . . meaning that the plaintiff must 'prove that the deficiency in training actually caused [the constitutional violation at issue].'" Id. (citations omitted).

In "'a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference. . . . [For] example [if] a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." Connick, 131 S. Ct. at 1361 (citing Canton, 489 U.S. at 390 n. 10). In such circumstances, deliberate indifference may be established through "single-incident" liability. Id. The Supreme Court in Canton stated that, "[g]iven the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." Id. (citing Bryan Cty., 520 U.S. at 409). To show deliberate indifference in this narrow range of circumstances, a plaintiff would have to show that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the

16

policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." Canton, 489 U.S. at 390. A "single incident of unconstitutional activity" is generally insufficient to make out a claim unless there is proof that the incident "can be attributed to a municipal policymaker." City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985); see also Luzerne Cty., 660 F.3d at 180.

The Court finds that Plaintiffs fail to allege supervisory liability for ECSO's failure to train Officer Esposito since they fail to state facts supporting their deliberate indifference based either on a pattern of constitutional violations of which they had notice or on a "single-incident" liability theory. First and foremost, Plaintiffs cite to no facts detailing specific deficiencies in training programs provided by ECSO and the Supervisory Defendants. Failure to so allege is thus fatal to Plaintiffs instant claim. However, even if Plaintiffs were to so allege specific deficiencies, the Complaint, as stated infra, alleges no facts pointing to prior instances of the disproportionate use of deadly force so as to provide ECSO and the Supervisory Defendants with notice concerning the training deficiencies. Instead, it appears based on Plaintiffs' Opposition brief, that they intend to rely on the single instance of Officer Esposito's use of deadly force: "Defendants' deliberate indifference to individuals' constitutional rights is evidenced by their placing an untrained and unsupervised Defendant Esposito, armed with a revolver, in an undercover operation in a public park where Defendants['] failure to train Esposito 'in the constitutional limitations on the use of deadly force' resulted in the tragic death of Defarra Gaymon." (Pls. Opp'n Br., at 14).

In its most recent consideration of "single-incident" liability for a § 1983 failure to train claim, the Supreme Court in <u>Connick</u> found that a failure to train prosecutors in their obligations to provide exculpatory evidence to defendants under <u>Brady v. Maryland</u> "does not fall within the narrow range of <u>Canton</u>'s hypothesized single-incident liability." <u>Connick</u>, 131 S. Ct. at 1361. The Court distinguished the deficiencies of prosecutorial training from failure to train claims asserted against police officers as follows:

> Armed police must sometimes make split-second decisions with life-or-death consequences. There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training. In stark contrast, legal "[t]raining is what differentiates attorneys from average public employees." Attorneys are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment. . . . In light of this regime of legal training and professional responsibility, recurring constitutional violations are not the "obvious consequence" of failing to provide prosecutors with formal in-house training about how to obey the law.

<u>Id.</u>, at 1361-62 (citations omitted). <u>Connick</u> thus strongly supports the need for police training in the constitutional limits of the use of deadly force. However, even assuming that the need for such training in this case was as obvious as under the facts alluded to in <u>Connick</u> and as stated in <u>Canton</u>, there are no facts in Plaintiffs' Complaint that allege anything whatsoever about the nature and extent of training on the part of ECSO regarding the constitutional limits of the use of deadly force with its police officers. Plaintiffs make no factual allegations in their Complaint regarding training, or more specifically, facts regarding the existence or lack thereof of a training program for Essex County police officers, the nature of the deficiencies of said program, for example in light of comparators such as training given by other municipalities or counties in handling weapons in public spaces or recognized standards for training police officers in such

18

areas.  Given that a municipality's culpability for a deprivation of rights "is at its most

tenuous where a claim turns on a failure to train," this Court finds that, given the limited

factual support for Plaintiffs' failure to train claim, it cannot survive a motion for

judgment on the pleadings.  See Connick v. Thompson, 131 S. Ct. 1350, 1359

(2011)(citing Oklayhoma City v. Tuttle, 471 U.S. 808, 822-23 (1985)(plurality

opinion)("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal

further removed from the constitutional violation, than was the policy in Monell.").

     To the extent that Plaintiffs allege that the Supervisory Defendants are liable in

their individual capacities for failing to supervise and/or control Defendant Esposito, the

Court finds the factual allegations insufficient to support such a claim.  As stated infra,

the Complaint fails to allege any facts relaying any information about Defendants

Fontoura and Ryan's whereabouts and awareness when the alleged injury occurred,

namely the fatal shooting of the Decedent by Officer Esposito.  The Complaint thus does

not state any facts which support their personal involvement in the alleged injury, nor are

there any facts alleged supporting their actual knowledge and acquiescence in Defendant

Esposito's use of deadly force.  The Court thus dismisses Plaintiffs' § 1983 claims for

failure to train, supervise and/or control as to the Supervisory Defendants.

**C.  Count V: Fourteenth Amendment Violations**

     Count V of Plaintiffs' Complaint alleges that the "ECSO undercover operations

conducted in Branch Brook Park specifically and unlawfully targeted a segment of the

population based solely on sexual orientation, and the unconstitutional covert operation

was entirely premised on an unequal application of the law to a constitutionally protected

class of individuals." (Compl., Count V, ¶ 2).  Defendants assert that Plaintiffs

allegations fail to state a plausible claim for any violation of the Fourteenth

Amendment's Equal Protection Clause for three reasons: (1) no allegations are made in

the Complaint that the Decedent was a member of a protected class or that the alleged

conduct targeted a fundamental right, and the operation in the Park had a rational basis;

(2) any "class of one" claim is insufficiently pled because no facts are alleged either that

the Decedent was intentionally treated differently from others similarly situated or that

there was no rational basis for such difference in treatment; and (3) any selective

enforcement claim must fail because there are insufficient allegations that the Decedent

was treated differently than other similarly situated individuals and that that selective

treatment was based on an unjustifiable standard.  (Defs. Br., at 4; Reply Br., at 10).  In

their Opposition, Plaintiffs solely contend that the undercover operation at Branch Brook

Park constituted selective enforcement of facially neutral laws in violation of the Equal

Protection Clause since it "singl[ed] out an arbitrary class of persons and intentionally

treating this class of individuals differently from the other similarly situated visitors to

Branch Brook Park without a rational basis."  (Pls. Opp'n Br., at 17).

    1. Equal Protection Claim

        In considering whether Plaintiffs have sufficiently pled an Equal Protection claim,

the Court must consider the nature of the classification at issue—whether existing on the

face of the law, or if the law is facially neutral, whether there is a discriminatory impact

to the law or discriminatory effects from its administration on a particular class.  See,

e.g., Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256 (1979);

Washington v. Davis, 426 U.S. 229 (1976).  Once the classification is identified, the

Court then considers the appropriate level of scrutiny to be applied, subsequently

determining whether the government action meets the level of scrutiny making the law constitutionally valid. See id.

Plaintiffs describe the nature of the classification at issue as the singling out which occurred in ECSO's undercover operations in Branch Brook Park which "specifically and unlawfully targeted a segment of the population based solely on sexual orientation." (Compl., Fifth Count, ¶ 2). Plaintiffs' Complaint is ambiguous as to whether the classification they must show is one which is discriminatory on the face of the ECSO policy itself or whether the classification is one which is established through a facially neutral law, such as the ordinances enforced in the Park, the administration of which allegedly having discriminatory effects. Plaintiffs appear to put forward the latter classification in arguing for the sufficiency of their Equal Protection claim under a selective enforcement theory in their Opposition brief, but this is by no means clear in the drafting of the Fifth Count of Plaintiffs' Complaint. (See Pls. Opp'n Br., at 16-21). Either way, the Court finds that, whether the Complaint attempts to assert a facially discriminatory policy according to which ECSO targets homosexuals or whether the Complaint attempts to assert their Equal Protection claim on the basis of a facially neutral ordinance that results in discriminatory effects in its administration, Plaintiffs have not provided sufficient facts to support a plausible claim for a violation. As stated infra in Section III.A.2 of this Opinion, beyond the events that occurred in Branch Brook Park on or before July16, 2010, Plaintiffs' Complaint alleges no facts indicating the nature and extent of an ECSO policy—labeled the "Quality of Life Operation" in Defendants' Reply (Defs. Reply, at 10)—specifically targeting individuals based on their sexual orientation. Neither does the Complaint allege facts under a theory that the ordinances enforced

against individuals based on their sexual orientation were administered with discriminatory effects beyond their application to the Decedent. Without factual allegations regarding any facially discriminatory policy or allegations regarding discriminatory effects of unequal application of the relevant ordinances enforced, the Plaintiffs' statements pertaining to "ECSO undercover operations," "unequal application of the law," and "discrete[] and discriminator[y] targeting [of] persons based on their sexual orientation" are legally conclusory and cannot survive the requisite pleading requirements for stating a claim. (Compl., Fifth Count, ¶¶ 2, 3). Therefore, without sufficient facts to establish a claim that the Supervisory Defendants established a classification in a policy or through the discriminatory effects from the administration of a facially neutral law, the Court need not consider the relevant level of scrutiny and whether Defendants meet said level of scrutiny.

　　2. "Class of One" Claim

　　In <u>Village of Willowbrook v. Olech</u>, the Supreme Court made clear that equal protection does not require allegations of discrimination against a group or on the basis of group characteristics, but may also encompass discrimination against a "class of one." 528 U.S. 562 (2000)(per curiam). A plaintiff may state a claim for a violation of the Equal Protection clause under a "class of one" theory when he "alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Id.,</u> at 564. To state a claim under the "class of one" theory, a plaintiff must at least allege that: "(1) the defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no

22

rational basis for the difference in treatment." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006)(citing <u>Olech</u>, 528 U.S. at 564).

In this case, all of the facts asserted regarding differential treatment are not asserted in Plaintiffs' Complaint, but are rather asserted in Plaintiffs' Opposition brief with the additional promise of "propounded discovery requests upon Defendants on this very issue." (Pls. Opp'n Br., at 19). The only facts stated in the Complaint that could pertain to allegations regarding the Decedent's differential treatment from others similarly situated are legally conclusory statements in the Fifth Count which state that "[t]he ECSO undercover operations conducted in Branch Brook Park specifically and unlawfully targeted a segment of the population based solely on sexual orientation." (Compl., Fifth Count, ¶ 2). Nothing in the "Factual Background" of the Complaint recites facts regarding the enforcement of ordinances in Branch Brook Park by ECSO or the Supervisory Defendants, and no facts are alleged as to their intentional differential treatment of the Decedent. Rather, Plaintiffs only state that, "[o]n or about July 16, 2010, at approximately 6:15 p.m., Defendant Officer Esposito was in Branch Brook Park in Newark, New Jersey as part of an ECSO undercover patrol operation. . . . At said time and place, there was an encounter between Defendant Officer Esposito and Defarra. Officer Esposito chased decedent Gaymon to a pond located within the park. Defendant Officer Esposito unholstered and drew his gun. Defendant Officer Esposito took aim with his revolver, and without legal justification, willfully, recklessly, maliciously, and/or intentionally fired his revolver once at Defarra, hitting Defarra with a bullet in the stomach, causing Defarra's death." (Compl., ¶¶ 12, 16-19). Since the Court may not supplement the Complaint with any facts alleged in Plaintiffs' Opposition brief, the Court

must evaluate the sufficiency of the facts as alleged in the Complaint alone.  See

Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173 (3d Cir. 1988)("It is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion

to dismiss.")(citation omitted).  Based on the facts cited above, Plaintiff has not

sufficiently stated a "class of one" equal protection claim on the basis of intentional,

differential treatment by the Supervisory Defendants.

> 3.  Selective Enforcement Claim

To state a selective enforcement claim, a plaintiff must show: "(1) that he was

treated differently from other similarly situated individuals, and (2) that this selective

treatment was based on an unjustifiable standard, such as race, or religion, or some other

arbitrary factor, or to prevent the exercise of a fundamental right." Dique v. N.J. State

Police, 603 F.3d 181, 184 n. 5 (3d Cir. 2010)(citing Hill v. City of Scranton, 411 F.3d

118, 125 (3d Cir. 2005)(quotation marks and ellipsis omitted)).  As just stated infra,

Plaintiffs' Complaint alleges no facts regarding any purported differential treatment over

and against similarly situated individuals.  Therefore, the Court finds that Plaintiffs have

not sufficiently pled a selective enforcement claim against the Supervisory Defendants.

**D.  Counts VI and VII: Sections 1985 and 1986 Claims for Conspiracy to Interfere with Civil Rights and Failure to Prevent Conspired Wrongs**

Counts VI and VII of Plaintiffs' Complaint assert, respectively, a § 1985

conspiracy claim and a § 1986 failure to prevent a § 1985 conspiracy claim predicated on

the alleged federal constitutional violations asserted in Count V, namely, claims for equal

protection violations brought pursuant to § 1983.  (Compl., Sixth and Seventh Counts).

Section 1985(3) prohibits conspiracies directed at "depriving, either directly or indirectly,

any person or class of persons of the equal protection of the laws, or of equal privileges

24

and immunities under the laws." 42 U.S.C. § 1985(3). The Court has found <u>infra</u> that Plaintiffs have failed to state a § 1983 claim for depriving the Decedent with equal protection of the laws under the Fourteenth Amendment. <u>See</u> Section III.C. Plaintiffs' Complaint neither asserts sufficient facts to support a class-based motive for the Supervisory Defendants' alleged actions that would support a claim under § 1985(3). See <u>Griffin v. Breckenridge</u>, 403 U.S. 88 (1971). Nor does the Complaint allege any facts to support an inference of an understanding amongst the Supervisory Defendants to deprive the Decedent of his constitutional rights on account of his sexual orientation. This absence of an underlying violation of Decedent's civil rights precludes the possibility of success on a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985. Section 1986 is derivative of § 1985 and thus depends on a § 1985 violation being sufficiently pled. <u>See</u> <u>Rogin v. Bensalem Twp.</u>, 616 F.2d 680, 696 (3d Cir. 1980)(if the "claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also."). Therefore, Plaintiffs' § 1986 claim fails and is dismissed as to the Supervisory Defendants.

## E.  Counts IV, IX, X, XI and XII: New Jersey State Law Claims

Having dismissed Plaintiffs' federal claims as asserted in Counts I, II, III, V, VI, VII and VII, this Court declines to exercise supplemental jurisdiction over the remaining New Jersey State law claims asserted in Counts IV, IX, X, XI and XII. Judicial economy dictates that there is no significant interest served by keeping this matter in federal court. 28 U.S.C. § 1367; <u>Growth Horizons, inc. v. Delaware County, Pa.</u>, 983 F.2d 1277, 1284-85 (3d Cir. 1993).

## F.  Plaintiffs' Request to Amend the Complaint

A court must grant leave to amend in the Third Circuit before dismissing a civil rights complaint that is facially deficient unless doing so would be inequitable or futile. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251-53 (3d Cir. 2007).  Therefore, in an abundance of caution and following Fletcher-Harlee, this Court dismisses the claims against the Supervisory Defendants without prejudice.  Plaintiff shall have thirty (30) days in which to file an Amended Complaint.  Failure to file an amended complaint within that time period will result in dismissal with prejudice against the Supervisory Defendants.

## IV.  CONCLUSION

For the foregoing reasons, the Supervisory Defendants' Motion for Judgment on the Pleadings is **GRANTED** without prejudice.  Plaintiffs have thirty (30) days in which to file an amended complaint to cure the pleading deficiencies stated herein.  Failure to do so will result in dismissal with prejudice.  An appropriate Order accompanies this Opinion.

DATED: March 29, 2012

José L. Linares
United States District Judge